IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DIANA KEY BUTTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 1:13cv130-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff, Diana Key Butts, applied for disability insurance benefits and supplemental security income, but her applications were denied at the initial administrative level. As a result, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which she found Plaintiff "not disabled" at any time through the date of the decision. Plaintiff then sought review from the Appeals Council, but that request was rejected. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 8); Def.'s Consent to Jurisdiction (Doc. 9). Based on the court's review of the record and the briefs of the parties, the court REVERSES AND REMANDS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

3

or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.     ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-four years old when the ALJ's decision was issued. Plaintiff had a limited education and attended special education classes until she dropped out. Tr. 27. Plaintiff had past relevant work as a housekeeper. Tr. 26. Following the administrative hearing, and employing the five-step process, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since the alleged onset date." (Step 1) Tr. 17. At Step 2, the ALJ found that Plaintiff suffered from the following severe impairments: "hypertension, back pain, shoulder pain, obesity, depression, and borderline intellectual functioning." Tr. 17. At Step 3, the ALJ found that Plaintiff's impairments, impairment or combination of impairments did not meet or medically equal any listed impairment. *Id*. Next, the ALJ found that Plaintiff retained the RFC

> to perform less than a Full Range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only occasionally push/pull against resistance with the upper extremities, except as needed for reaching. She should not perform overhead reaching with the non-dominant upper extremity. She should never climb ladders, ropes, or scaffolds. She could occasionally climb ramps, stairs, stoop, crouch, or kneel. She could never crawl. She should avoid operating dangerous machinery or work at unprotected heights. Due to deficits with literacy, she would require a job with no reading above the first grade level. Due to pain, borderline intellectual functioning, psychological issues and other factors she would have some moderate deficits in concentration persistence or pace which would limit her to simple routine tasks with only minimal decision making, changes in the work setting or use of judgment. Her deficits in concentration, persistence or pace could also cause her to be off task or at a non-productive pace for up to 5% of the workday.

Tr. 21.  Following the RFC determination, the ALJ found that Plaintiff could not perform her past relevant work.  (Step 4) Tr. 26.  At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 27.  The ALJ identified the following occupations as examples:  "packer," "usher," and "cafeteria attendant."  *Id*.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 5, 2009, through the date of th[e] decision."  *Id*.

## IV. DISCUSSION

The single issue presented in this case relates to the ALJ's decision that Plaintiff's impairments did not meet or equal the criteria of Listing 12.05.  Within this claim, Plaintiff argues that the ALJ erred in finding that Plaintiff did not meet the introductory paragraph requirements of the listing and erred in finding that Plaintiff did not meet the criteria of Listing 12.05C because she suffered no "additional and significant" impairment.  The Commissioner concedes error as to the Paragraph C finding, but maintains that the ALJ's decision should be upheld, because the Paragraph C finding is only relevant if Plaintiff meets the introductory paragraph requirements of the Listing— which the Commissioner argues Plaintiff does not.

Under the Listing scheme of 12.05, a Plaintiff must first meet the requirements of the introductory paragraph, then the criteria of the subparagraph before they can be found

to meet the listing.  *See* Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.").  The introductory paragraph of Listing 12.05 defines "intellectual disability" as:

> Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis in original).  Thus, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  It is that third requirement where the ALJ determined that Plaintiff fell short.

Plaintiff first points to her presentment of a full IQ score of 52 and a diagnostic impression of mild mental retardation, which was not rejected by the ALJ.  Then Plaintiff points this court to the rebuttable presumption that absent evidence of sudden trauma, there is a rebuttable presumption that an IQ score will stay constant throughout life, and that "a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two."  Pl.'s BR. (Doc. 11) at 5 (quoting *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001)).  Thus, keeping in mind such a

presumption, the court turns to the ALJ's reasons for finding that the presumption had been rebutted.

When specifically addressing whether Plaintiff meet the criteria of Listing 12.05C, the ALJ first made the finding that Plaintiff did not meet the diagnostic requirements of the introductory paragraph, then later made the error regarding the Paragraph C criteria. In making the introductory paragraph finding, the ALJ found that Plaintiff had not manifested deficits in adaptive functioning prior to age 22, stating that Plaintiff's "history of mental illness does not suggest historic lifetime difficulties, and day-to-day function was significantly better at one time based upon the claimant's school work or function." Tr. 21. The ALJ also pointed out that Plaintiff "did not quit school or work because of her mental impairments" and that Dr. Jordan had "determined that the claimant should be able to do labor jobs that did not require reading." *Id*. The court finds that the ALJ's determination is in error and without support of substantial evidence.

First, as to the issue of school, while it is true that Plaintiff testified that she dropped out of school due to pregnancy rather than because of mental impairments, the fact of the matter was that she was in special education classes while in school. Tr. 20. The court agrees with Plaintiff and its sister court in the Northern District of Alabama, that special education classes indicate deficits in adaptive functioning. *Vaughn v. Astrue*, 494 F. Supp. 2d 1269, 1274 (N.D. Ala. 2007). The Commissioner must keep in mind, that the test for the introductory paragraph is simply deficits in adaptive functioning, not

"significant deficits." The determination regarding the level of those deficits is reserved for Paragraph D of the Listing.

Second, as to the issue of work, "once a claimant is found to suffer from a listed impairment, vocational factors are irrelevant." *Id.* (citing *Ambers v. Heckler*, 736 F.2d 1467 (11th Cir. 1984)). This is because once the determination is made that a claimant's impairments meet or equal a listing, benefits are awarded. Further, the ALJ's assertions regarding Plaintiff's work history are not accurate. Plaintiff did quit her work due to a mental impairment. Plaintiff's job required her to read a list of tasks to be performed on a daily basis. She is unable to read, so a co-worker would read her the list. Once that co-worker quit, Plaintiff was unable to continue working. That evidences a deficit in adaptive functioning. Moreover, the court must point to the troubling inconsistency in the ALJ's reliance on Plaintiff's supposed "school work" as evidence that Plaintiff had no deficits in adaptive functioning, while at the same time, the ALJ's relied on Plaintiff's ability to do work, as long as it did not involve reading above a first grade level. Clearly such a restriction evidences a deficit in Plaintiff's schooling and her ability to work.

Third, the court has questions regarding the ALJ's reliance on Dr. Jordan's opinion to make the introductory paragraph determination. The ALJ cites Dr. Jordan's opinion regarding the Plaintiff's "history of mental illness," Tr. 20, where the report actually discusses Plaintiff's "history of illness," Tr. 331. This insertion of the word "mental" is important because the report was completed in 2010, when Plaintiff was 54

years of age, and related to Dr. Jordan's diagnostic impression of "Major Depressive Disorder," "Borderline Intellectual Functioning" and "Chronic pain."  *Id*.  To which of these "illnesses" Dr. Jordan was referring is not clear.  However, Dr. Jordan's diagnosis of mental retardation and the IQ testing did not occur until 2011.  Tr. 335.  Thus, Dr. Jordan could not have been opining regarding Plaintiff's mental retardation in the 2010 report.

Accordingly, the court finds that these errors in the ALJ's decision requires this court to remand this decision for the ALJ to clarify his rebuttal of the presumption that Plaintiff did manifest deficits in adaptive functioning prior to the age of 22 and to properly explain his reliance on the Dr. Jordan's opinion where the 2010 report does not appear to address adaptive functioning prior to the age of 22.

## V.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this case REMANDED for proceedings consistent with this opinion.

A separate judgment will issue.

Done this 24th day of March 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE